IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | NO. 3:16-cr-00242 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| | ) | |
| ANTONIO JOHNSON | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Emergency Motion for Modification of Sentence (Doc. No. 65, "Motion"),[1] whereby Defendant seeks a reduction of his 151-month sentence and immediate release from the custody of the Bureau of Prisons ("BOP"), pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Like many other federal inmates in this district and around the country, Defendant claims that the ongoing COVID-19 pandemic, as applied to his specific health profile, satisfies the requirement of "extraordinary and compelling reasons" necessary for this Court to grant "compassionate release" under Section 3582(c)(1)(A)(i), and that compassionate release is otherwise appropriate in his case. The Government has filed a response in opposition, (Doc. No. 67, "Response"), arguing that Defendant has not shown as required "extraordinary and compelling reasons" for compassionate release or that he is not a danger to the safety of other persons, and that other applicable considerations counsel strongly against compassionate release.[2]

---

[1] Such motions are also known as ones for "compassionate release"; thus, the Court refers to both "compassionate release" and "sentence modification" throughout this opinion when referring to Defendant's requested relief. *See United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at n.2 (D. Utah Feb. 18, 2020) ("In this order, the court uses the phrase 'compassionate release' and 'sentence modification' interchangeably, which is consistent with how other courts have used the terms."); *United States v. McDonald*, No. 94-CR-20256-1, 2020 WL 3166741, at *1 (W.D. Tenn. June 8, 2020).

[2] In its response, the Government also argued that Defendant failed to exhaust his administrative remedies. The Court agreed and initially denied Defendant's Motion for failure to demonstrate that he had in fact exhausted his

## PROCEDURAL BACKGROUND

On December 7, 2016, Defendant was charged in an eight-count indictment. Specifically, the Indictment charged Defendant: in Counts One, Two, Four, Five and Seven with possession with intent to distribute a mixture and substance containing cocaine, in violation of 21 U.S.C. § 841(a)(1); in Count Three and Eight with possession with intent to distribute a mixture and substance containing cocaine and heroin, in violation of 21 U.S.C. § 841(a)(1); and in Count Six with possession with intent to distribute a mixture and substance containing heroin, in violation of 21 U.S.C. § 841(a)(1). (Doc. No. 14). On April 25, 2017, he pled guilty to all eight counts of the Indictment pursuant to a Rule 11(c)(1)(C) plea agreement wherein the parties agreed to a term of imprisonment of 151 months. (Doc. No. 34). On January 11, 2018, consistent with the terms of the Rule 11(c)(1)(C) plea agreement, the Court sentenced Defendant to 151 months' incarceration and three years' supervised release. (Doc. No. 44).

## LEGAL STANDARDS FOR "COMPASSIONATE RELEASE"

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the Section 603(b)(1) First Step Act of 2018, P.L. 115-391, 132 Stat. 5239,[3] the district court may under certain circumstances grant a

---

administrative remedies. (Doc. No. 71). Thereafter, Defendant filed a Motion for Reconsideration attaching an "Inmate Request to Staff for Compassionate Release" form sent to the warden of FCC Forrest City Low on June 25, 2020, more than thirty days ago. (Doc. No. 73 at 2); *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (explaining that any request for compassionate release to a district court is premature until a "defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) (holding that a district court may not disregard the exhaustion requirements of Section 3582(c)(1)(A)(i)). In light of Defendant's filing, the Court granted Defendant's Motion for Reconsideration, and reopened his Motion for Sentence Reduction to be considered on the merits. (Doc. No. 74).

[3] That paragraph of Section 603 provides:

(b) INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE.—Section 3582 of title 18, United States Code, is amended—
    (1) in subsection (c)(1)(A), in the matter preceding clause (i), by inserting after ''Bureau of Prisons,'' the following: ''or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the

defendant's motion for compassionate release if what the Court will call the "exhaustion requirements" have been satisfied—*i.e.*, "[either] the defendant has fully exhausted all administrative rights to appeal a failure of [BOP] to bring a motion [for compassionate release] on the defendant's behalf or [there has been a] lapse of 30 days since the receipt of such a request [for BOP to file such a motion] by the warden of the defendant's facility, whichever is earlier."

Once it properly can act on a motion brought under 18 U.S.C. § 3582(c)(1)(A), the district court can reduce a sentence under that provision (for any defendant younger than 70 years old)[4] only if it finds extraordinary and compelling reasons to do so. *See* 18 U.S.C. § 3582(c)(1)(A)(i). The defendant bears the burden of showing that "extraordinary and compelling reasons" exist to justify release under the statute. *United States v. Hayward*, No. CR 17-20515, 2020 WL 3265358, at *1 (E.D. Mich. June 17, 2020). And the Court does not write on a clean slate in considering what qualifies as "extraordinary and compelling reasons."

Congress tasked the Sentencing Commission with promulgating "general policy statements regarding . . . the appropriate use of . . . the sentence modification provisions set forth in [section] 3582(c) of title 18. . . ." 28 U.S.C. § 994(a)(2)(C). Congress directed the Sentencing Commission, in promulgating these policy statements, to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In response to these congressional instructions, the Sentencing Commission promulgated U.S.S.G. § 1B1.13, and its application note, which collectively comprise the policy statement(s).

---

defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . ."

[4] This subparagraph provides an alternative ground for relief for defendants who are at least 70 years of age. *See* 18 U.S.C. § 3582(c)(1)(A). It is inapplicable here, however, because Defendant is only 39.

Practitioners of federal criminal law are accustomed to treating the Sentencing Commission's policy statements as advisory only (especially in the aftermath of *United States v. Booker*, 543 U.S. 220 (2005)). They are exactly that in the context of a defendant's original sentencing—but not in the context of a motion under Section 3582(c)(1)(A). In the latter context, they are by statute mandatory, inasmuch as Congress has prohibited courts from granting a sentencing reduction unless "such a reduction is consistent with applicable policy statements issued by" the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).[5]

Together, U.S.S.G. § 1B1.13 and its application note do two things that are relevant here. First, they define, in Application Note 1, "extraordinary and compelling circumstances" to apply in (and only in) situations falling within one or more of five separate and particular categories, which the Court discusses below. *See* U.S.S.G. § 1B1.13 n.1(A)(i)-(ii), (B), (C) & (D).[6] Second, they prescribe additional requirements for obtaining a sentence reduction where the defendant does meet the threshold requirement of "extraordinary and compelling circumstances."[7] Specifically, for a defendant not yet 70 years old (such as Defendant), the court may reduce a sentence if (1) extraordinary and compelling reasons warrant a reduction, *and* (2) the defendant is not a danger to the safety of any other person or to the community, *and* (3) the reduction is consistent with the

---

[5] In *Booker*, the Supreme Court found unconstitutional (*i.e.*, violative of the Sixth Amendment) Congress's directive that the Sentencing Guidelines are generally what was referred to as "mandatory," meaning that sentence generally had to be imposed within the guideline range calculated using the Sentencing Guidelines. To say the least, this limited Congress's ability to make anything about the Sentencing Guidelines mandatory in the context of an original sentencing. But such limitations do not exists in the context of a motion for sentence reduction under Section 3582(c)(1)(A), wherein the Sixth Amendment concerns driving the *Booker* decision are entirely absent.

[6] The Application Note also contains various other instructions for considering whether extraordinary and compelling circumstances exist. Such instructions need not be discussed here, as the Court herein resolves the Motion without any need to refer to them.

[7] It is important to note that these other requirements—being, after all, *requirements*—are mandatory. That is to say, a defendant is *not* eligible for compassionate release merely because there are "extraordinary and compelling reasons" within the meaning of Application Note 1(A).

policy statement. *See* U.S.S.G. § 1B1.13(1)(A), (2) and (3). The Application Note indicates the third requirement may be redundant of the first two, inasmuch as it states that "any reduction made . . . for the reasons set forth in subdivisions (1) and (2) [*i.e.*, U.S.S.G. § 1B1.13(1) & (2)] is consistent with this policy statement." *Id.* at n.5.[8]

If the court does find these (two or three depending on how one looks at it) requirements satisfied, the defendant has met the basic eligibility for compassionate release. But even then, the Court does not automatically or necessarily grant the motion for a reduction; instead, it *may*, after considering the factors set forth in 18 U.S.C. § 3553(a), reduce the term of imprisonment (and may impose a term of probation or supervised release that does not exceed the unserved portion of the original term of imprisonment). *See* 18 U.S.C. § 3582(c)(1)(A).

The (familiar) sentencing factors set forth in Section 3553(a) include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
i) [United States Sentencing Guidelines, ("U.S.S.G.")]—

---

[8] Like many redundancies, this one may seem odd due to its apparent unnecessariness. But it seems motivated by the valid desire to ensure that the Sentencing Commission's criteria for a sentencing reduction expressly both: (a) included the congressional requirement, discussed below, that any reduction be "consistent with applicable policy statements issued by" the Sentencing Commission; and (b) clarified that the required consistency involved nothing more than satisfaction of U.S.S.G. § 1B1.13(1) & (2).

ii) [in effect at the time of sentencing]

(5) any pertinent policy statement—
    A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and
    B) [and in effect at the time of sentencing]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Relevant to factor number (5), as discussed above, the Sentencing Commission has issued a binding policy statement regarding reduction of a term of imprisonment under Section 3582(c)(1)(A). *See* U.S.S.G. § 1B1.13. As further mentioned above, Application Note 1 to U.S.S.G. § 1B1.13 speaks to what constitutes "extraordinary and compelling reasons," identifying five categories of situations where such reasons may be found to exist. Two of the five involve the defendant's medical condition, *i.e.*: (i) the defendant is suffering from a terminal illness; or (ii) the defendant is suffering from a serious physical or medical condition, or serious functional or cognitive impairment, or deteriorating physical or mental health due to the ageing process, that substantially diminishes the defendant's ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. *See* U.S.S.G. § 1B1.13 n.1(A). The next two categories relate to defendants over 65 and defendants with particular grave family circumstances, respectively; they are not applicable to the instant Motion.

As for the last of the five categories (sometimes referred to as the "residual" or "catchall" provision), the Application Note describes it as encompassing the situation where, "*[a]s determined by the Director of the Bureau of Prisons*, there exists in the defendant's case an extraordinary and compelling reason *other* than, or in combination with, the reasons described in

subdivisions (A) through (C)." U.S.S.G. § 1B1.13 n.1(D) (emphasis added).

<u>THE PARTIES' RESPECTIVE POSITIONS</u>

In the Motion, Defendant relies on the prevailing COVID-19 pandemic and his medical condition, hypertension. As Defendant describes it, he "is currently imprisoned at FCI Forrest City Low, where there has been an outbreak of COVID-19. Thus, [Defendant] faces potentially life threatening circumstances as he suffers from hypertension." (Doc. No. 65 at 1). As a result, he claims, he has shown "extraordinary and compelling reasons" for his compassionate release under Application Note 1(A)(ii)(I). (*Id*. at 6).

The Government argues in response that Defendant has not shown "extraordinary and compelling reasons" as required for compassionate release. (Doc. No. 67 at 11-16). The Government also correctly notes that under U.S.S.G. § 1B1.13(2), "the Court must deny a sentence reduction unless it determines the defendant 'is not a danger to the safety of any other person or to the community.'" (*Id*. at 17 (quoting U.S.S.G. § 1B1.13(2))). In the Government's view, this determination cannot be made as to Defendant. (*Id*.). The Government further suggests that even if such determination could be made, the Motion should be denied because the factors under Section 3553(a) militate against granting the Motion. (*Id*.).

<u>ANALYSIS</u>

I.    <u>EXTRAORDINARY AND COMPELLING REASONS</u>

In addressing the merits, the Court first must determine whether "extraordinary and compelling reasons" exist for Defendant's compassionate release under the standards set forth by U.S.S.G. § 1B1.13 and its application note. Defendant bears the burden to show that extraordinary and compelling reasons exist warranting his release. *United States v. Shabudin*, No. 11-CR-00664-JSW-1, --- F. Supp. 3d ----, 2020 WL 2464751, at *3 (N.D. Cal. May 12, 2020); *United States v.*

*Crouch*, No. 5:19-CR-00029-TBR, 2020 WL 1963781, at *3 (W.D. Ky. Apr. 23, 2020) ("[Defendant's] circumstances do not meet the burden of extraordinary and compelling.").

As noted, in the instant case, Defendant relies upon the above-referenced medical condition (hypertension), which he claims constitutes, when combined with the COVID-19 pandemic, an extraordinary and compelling reason. Such an assertion, as often is the case on compassionate release motions, asks the Court to put itself in the difficult position of making medical assessments it is simply not qualified to make.

As it happens, however, in the Court's experience defendants and the Government alike tend to refer (and defer) to the views of the Centers for Disease Control and Prevention ("CDC") when making their arguments for "extraordinary and compelling reasons" within the meaning of Application Note 1(A). More specifically, typically the Government concedes that if the defendant suffers from a condition that is "chronic," and if the CDC says that the particular chronic condition is one that places those suffering from it at a higher risk from COVID-19, the Government concedes that there are "extraordinary and compelling circumstances" such that the primary requirement for compassionate release is satisfied. And typically, the moving defendant effectively agrees that the question of whether this requirement is satisfied should be answered by reference to the CDC's view on whether the defendant's condition places him or her at a higher risk from COVID-19. Typically, neither side makes more than a minimal (if any) reference to the views of anyone else regarding the relationship between COVID-19 and the defendant's (alleged) medical conditions.

However, the Government does not concede such here, seemingly because the CDC indicates that hypertension only "might" place a person at elevated risk of severe illness from COVID-19. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical*

*Condition*s, CDC , https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited August 14, 2020). Although the Court credits that hypertension "might" place a person at elevated risk of severe illness from COVID-19, the Court concludes that Defendant's hypertension does not constitute extraordinary and compelling reasons for his release.

Numerous courts have denied prisoners' motions for compassionate release when the basis of the motion is the medical condition of hypertension combined with the COVID-19 pandemic. *See United States v. Cox*, No. 13-CR-20779-02, 2020 WL 4581692, at *1 (E.D. Mich. Aug. 10, 2020) (explaining that a diagnosis of hypertension does not constitute extraordinary and compelling reasons and noting that "hypertension is a common medical condition shared by over 100 million Americans."); *United States v. Hall*, No. CR JKB-04-323, 2020 WL 4582712, at *2 (D. Md. Aug. 10, 2020) (explaining that the defendant's hypertension diagnosis does "not sufficiently differentiate him form the thousands of similarly situated incarcerated individuals to constitute extraordinary and compelling reasons."); *United States v. Chambers*, No. 18-47 2020 WL 4260445, at *4 (E.D. La. July 24, 2020) (denying motion for compassionate release for 51-year-old male defendant with hypertension and other alleged medical conditions, explaining that "courts have found that hypertension does not amount to an extraordinary or compelling reason for release" during the COVID-19 pandemic) (collecting cases); *United States v. Jordan*, No. 09-CR-20490, 2020 WL 4016087, at *2 (E.D. Mich. July 16, 2020) (noting that "the CDC believes that hypertension 'might be' a COVID-19 risk factor, but this determination is still uncertain"). Moreover, current medical research indicates that "the link between hypertension and COVID-19 is unclear." *See COVID-19 and Hypertension: What We Know and Don't Know*, Am. College of Cardiology, https://www.acc.org/latest-in-cardiology/articles/2020/07/06/08/15/covid-19-and-

hypertension (last accessed August 14, 2020).

Furthermore, Defendant does not allege that his prescribed medication is insufficient to control his hypertension. The Presentence Investigation Report states that

> According to the defendant, he was diagnosed with high blood pressure prior to his incarceration for the instant offense. Medical records provided by Grayson County Detention Center in Leitchfield, Kentucky, where the defendant is currently housed, indicate the defendant is currently prescribed Lisinopril, 20mg (for high blood pressure); metoprolol, 25mg (for high blood pressure); and clonidine, .1 mg (for high blood pressure).

(Doc. No. 47 at ¶ 86). In the Motion, Defendant maintains that he "takes Lisinopril for his hypertension, as well as prescription hydroCHLOROthiazide." (Doc. No. 65 at 6). He also attaches to his Motion a copy of his respective prescriptions for each of these two medications. (*Id.* at 10). Accordingly, Defendant's hypertension appears to be controlled and he is only 39 years old, which distinguishes his case from those where defendants with hypertension were at risk of infection due to either their age or other conditions, and thus granted release. *See, e.g., United States v. White*, No. 3:17-cr-00098, 2020 WL 4530931, at *2 (M.D. Tenn. Aug. 6, 2020) ("[The defendant's] high blood pressure, macular degeneration, and acute respiratory infection are serious illnesses that when combined with his age at 60 and other health problems, place him in danger should he contract COVID-19.").

Defendant has provided no evidence to show that his hypertension puts him at a high risk of either being infected with COVID-19 or having a bad outcome were he to be infected with COVID-19. Indeed, his hypertension appears to be controlled, and he has not indicated that he suffers any other health conditions. Accordingly, Defendant has not met his burden to show extraordinary and compelling reasons for release; thus, his Motion fails.

III.     DANGER TO THE SAFETY OF ANY OTHER PERSON OR THE COMMUNITY

Even if he could show extraordinary and compelling reasons, Defendant could be eligible for compassionate release, such that the Court would then proceed to an analysis of the factors under 18 U.S.C. § 3553(a), only if he is not a danger to other persons or the community. *See* U.S.S.G. § 1B1.13. "[T]he defendant has the burden of proof on the issue of his lack of danger to others and the community." *See United States v. Rodriguez*, No. 3:95CR772, 2020 WL 3260711, at \*1 (N.D. Ohio June 13, 2020). Because Defendant fails to qualify for compassionate release, irrespective of whether he would pose a danger upon release, the Court will not address the Government's (certainly colorable) argument that he would pose such a danger.

IV.     SECTION 3553(a) FACTORS

Because Defendant fails to qualify for compassionate release, irrespective of how the Section 3553(a) factors apply to him, the Court will not address the Government's (certainly colorable) suggestion that they militate against compassionate release for Defendant.

CONCLUSION

Compassionate release is an extraordinary remedy. *See*, *e.g.*, *United States v. Rizzo*, No. CR 16-20732, 2020 WL 2092648, at \*3 (E.D. Mich. May 1, 2020). Such remedy is unavailable here because Defendant has failed to satisfy even its first requirement, *i.e.*, extraordinary and compelling reasons to justify it.

For these reasons, the Motion (Doc. No. 65) is **DENIED**.

IT IS SO ORDERED.


*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE