IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | NO. 3:16-cr-00242 |
| v. ) | JUDGE RICHARDSON |
| ) | |
| ) | |
| ANTONIO JOHNSON ) | |

## MEMORANDUM OPINION

Pending before the Court is Defendant's Motion for Compassionate Release (Doc. No. 81, "Motion"). Via the Motion, Defendant seeks a reduction of his 151-month sentence and immediate release from the custody of the Bureau of Prisons ("BOP"), pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The Government has filed a response in opposition (Doc. No. 85, "Response"), arguing that the Motion should be denied.

### BACKGROUND

On December 7, 2016, Defendant was charged in an eight-count indictment. Specifically, the Indictment charged Defendant: in Counts One, Two, Four, Five and Seven with possession with intent to distribute a mixture and substance containing cocaine, in violation of 21 U.S.C. § 841(a)(1); in Count Three and Eight with possession with intent to distribute a mixture and substance containing cocaine and heroin, in violation of 21 U.S.C. § 841(a)(1); and in Count Six with possession with intent to distribute a mixture and substance containing heroin, in violation of 21 U.S.C. § 841(a)(1). (Doc. No. 14). On April 25, 2017, he pled guilty to all eight counts of the Indictment pursuant to a Rule 11(c)(1)(C) plea agreement wherein the parties agreed to recommend a term of imprisonment of 151 months. (Doc. No. 34). On January 11, 2018, consistent with the terms of the Rule 11(c)(1)(C) plea agreement, the Court sentenced Defendant to 151

months' incarceration and three years' supervised release. (Doc. No. 44). Defendant has been serving his sentence at FCI Forrest City Low. According to BOP, Defendant's release date is February 19, 2028. *See Federal Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed Feb. 14, 2022).

On May 18, 2020, Defendant filed his first motion for compassionate release arguing that the ongoing COVID-19 pandemic, as applied to his specific health condition (*i.e.*, hypertension), satisfied the requirement of "extraordinary and compelling reasons" necessary for this Court to grant "compassionate release" under Section 3582(c)(1)(A)(i). (Doc. No. 65). On July 7, 2020, Defendant's case was transferred to the undersigned, and that same day, the Court denied Defendant's first motion for compassionate release based on Defendant's failure to exhaust his administrative remedies. (Doc. No. 71). Defendant then filed a second motion for compassionate release (which he titled as a motion for reconsideration) on July 29, 2020, raising the same arguments for release that he raised in his first motion for compassionate release. (Doc. No. 73). On August 17, 2020, the Court denied Defendant's second motion for compassionate release, finding that he had not met his burden to show extraordinary and compelling reasons for release based on his hypertension in combination with the COVID-19 pandemic. (Doc. No. 76). On January 4, 2022, Defendant filed his third motion for compassionate release, which is the Motion currently pending before the Court.

LEGAL STANDARD

Prior to 2018, only the Director of the Bureau of Prisons could move for compassionate release. The First Step Act amended 18 U.S.C. § 3582(c) to allow prisoners to move for compassionate release on their own behalf. *See* First Step Act of 2018, § 603, Pub. L. No. 115-391, 132 Stat. 5239. Now, under 18 U.S.C. § 3582(c)(1)(A), as modified by the Section 603(b)(1)

First Step Act,[1] a district court *may* under certain circumstances grant a defendant's motion for compassionate release (hereinafter, "defendant-filed motion"). *See United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) ("Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory."). In order to grant such a defendant-filed motion, however, a court must find that the so-called "exhaustion requirements" have been satisfied—*i.e.*, "[either] the defendant has fully exhausted all administrative rights to appeal a failure of [BOP] to bring a motion [for compassionate release] on the defendant's behalf or [there has been a] lapse of 30 days since the receipt of such a request [for BOP to file such a motion] by the warden of the defendant's facility, whichever is earlier." *See also United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) (explaining that a district court may not disregard the exhaustion requirements of Section 3582(c)(1)(A)).

Once it properly can act on a defendant-filed motion brought under 18 U.S.C. § 3582(c)(1)(A), the district court next determines whether, in its discretion, to grant compassionate release to a defendant. In its recently issued opinion in *Jones*, the Sixth Circuit discussed the steps of the compassionate release analysis:

> The three-step § 3582(c)(1)(A) test is as follows. At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i).12 At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A) (emphasis added). The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. *See* U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018). Thus, if § 1B1.13 is still "applicable," courts

---

[1] That paragraph of Section 603 provides:

 (b) INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE.—Section 3582 of title 18, United States Code, is amended—
  (1) in subsection (c)(1)(A), in the matter preceding clause (i), by inserting after ''Bureau of Prisons,'' the following: ''or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . .''

must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon* [*v. United States*], 560 U.S. [817,] 827 [(2010)]. At step three, "§ 3582(c)[ (1)(A) ] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id*.

*Jones*, 980 F.3d at 1108. The court then went on to resolve the following question with respect to defendant-filed motions (as opposed to compassionate-release motions filed BOP) in particular: "given the First Step Act's procedural reforms to compassionate release, is § 1B1.13 still an applicable—'that is, "relevant" or "appropriate,"' [*United States v. Ruffin*, 978 F.3d 1000, 1007–08 (6th Cir. 2020)]—policy statement for the purposes of the second § 3582(c)(1)(A) inquiry?" *Id*. The court noted that this is a question that has "sharply divided the courts," *id*. (citation omitted), as many district courts, including this Court, previously considered the Section 1B1.13 policy statements applicable when determining whether compassionate release was warranted. The court then chose a side, holding that "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release." *Id*. (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).[2] Therefore, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id*.

In other words, because § 1B1.13 is inapplicable to defendant-filed motions, a district court adjudicating such a motion is not bound by anything § 1B1.13 has to say about—including any

---

[2] Prior to *Jones*, this Court treated § 1B1.13 as applicable to all motions for compassionate release, whether filed by BOP or by a defendant. The Court does not necessarily perceive that such treatment resulted in a resolution of any defendant-filed motions that was any different than the result the Court would have reached by treating § 1B1.13 as inapplicable to defendant-filed motions. But the Court does note that at least the analytical framework it used prior to *Jones* was different than the analytical framework it will use in the aftermath of *Jones*.

limitations or requirements § 1B1.13 would impose upon—the finding of extraordinary and compelling reasons. But this rule is not the only consequence of the Sixth Circuit's decision in *Jones*. Another is that the district court, in adjudicating a defendant-filed motion, may disregard the requirement of § 1B1.13(2) that the court find the defendant not pose a danger (to any other person or to the community) in order to grant compassionate release.

If, in adjudicating a defendant-filed motion, a district court determines that "extraordinary and compelling reasons" for compassionate release exist, the court then determines whether compassionate release is warranted in light of the Section 3553(a) sentencing factors. *See Jones*, 980 F.3d at 1112.³ The sentencing factors set forth in Section 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes of the defendant; and
>    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
>       i) [United States Sentencing Guidelines, ("U.S.S.G.")]—
>       ii) [in effect at the time of sentencing]
>
> (5) any pertinent policy statement—
>    A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and
>    B) [and in effect at the time of sentencing]

---

³ As suggested above, under *Jones*, the analysis of a defendant-filed motion differs from the analysis of a BOP-filed motion in that (among other ways) the latter kind of motion—to which § 1B1.13 remains applicable—requires an intermediate determination of whether the defendant-movant poses a danger to other persons or the community. *See* U.S.S.G. §1B1.13(2).

> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

## DISCUSSION

### A. Nonretroactive Sentencing Guideline Decision

Defendant argues that the Court should consider the instant Motion—his third motion for compassionate release—because of an "intervening change in law." (Doc. No. 81 at 5). The intervening change in law on which Defendant relies is the Sixth Circuit's decision in *United States v. McCall*, 20 F.4th 1108 (6th Cir. 2021). In that case, the court held that "a court may consider a nonretroactive change in the law as one of several factors forming extraordinary and compelling circumstances qualifying for sentence reduction under 18 U.S.C. § 3582(c)(1)(A)." *Id*. at 1116. The court went so far as to say that a district court abuses its discretion when it fails to consider whether the combination of the COVID-19 pandemic, rehabilitation efforts, and a nonretroactive change in sentencing law constitute extraordinary and compelling circumstances warranting a prisoner's compassionate release. *Id*. at 1113. Defendant contends that based on *McCall*, the Court should consider the Sixth Circuit's nonretroactive decision in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019), when determining whether Defendant has demonstrated extraordinary and compelling reasons for his release. In *Havis*, the Sixth Circuit held that the Sentencing Guideline's definition of a "controlled-substance offense" did not include attempt crimes. 927 F.3d at 387.

First, the Court notes that the Sixth Circuit's holding in *McCall* is far from settled law, even in the Sixth Circuit. Indeed, an intra-circuit split exists within the Sixth Circuit on this issue. For example, in *United States v. Hunter*, 12 F.4th 555 (6th Cir. 2021), decided prior to *McCall*, a

panel of the Sixth Circuit held that when reviewing § 3582(c)(1)(A) motions that asked the court to consider nonretroactive precedent, district courts should do so only when weighing the § 3553(a) factors, and not when determining whether extraordinary and compelling reasons exist. *Id*. at 565. Recently, another of the panel of the Sixth Circuit criticized *McCall*'s holding and again held that nonretroactive precedent cannot be relied upon as a basis for finding extraordinary and compelling reasons for compassionate release. *United States v. McKinnie*, ---F.4th---, 2022 WL 221539, at *4 (6th Cir. Jan. 26, 2022) (criticizing *McCall* for failing to follow "the law of the circuit" as laid out in *Hunter*).

Nevertheless, even if the Court were to follow *McCall* and consider the Sixth Circuit's nonretroactive decision in *Havis* when determining whether Defendant has demonstrated extraordinary and compelling reasons, Defendant would still not be entitled to the relief he seeks. Defendant asserts that when examining his predicate offenses under *Havis*, he lacked the requisite two convictions to qualify as a career offender under the United States Sentencing Guidelines, and thus should not have been sentenced as a career offender. (Doc. No. 81 at 6). As the Government aptly points out,

> The Presentencing Recommendation (PSR) and the Addendum to the PSR identified three Tennessee state felony convictions that qualified as career-offender predicates, including a 2009 Tennessee conviction for possession of cocaine for resale, and two 2005 Tennessee convictions involving possessing less than .5 grams of cocaine for resale in violation of T.C.A. § 39-17-417. (PSR Addendum 1-2). While the Defendant claims that his predicate offenses are not "controlled substance offenses," he is mistaken. In Tennessee, possession with intent to deliver is categorically a controlled substance offense under U.S.S.G. § 4B1.2(b) and having these qualifying convictions the Defendant was, and is, properly classified as a career offender. *United States v. Garth*, 965 F.3d 493, 498 (6th Cir. 2020).

(Doc. No. 85 at 2).

The Court agrees with the Government's analysis. In *Garth*, the Sixth Circuit held that possession with intent to deliver a controlled substance under Tennessee law is categorically a

controlled substance offense under the Sentencing Guidelines. 965 F.3d at 498. The court explained that, "possession with intent to deliver is a completed crime, not an attempted one that *Havis* puts beyond the guidelines' reach." *Id*. at 497. Here, the PSR reveals that Defendant pled guilty in Davidson County Criminal Court to Possession with Intent to Distribute .5 Grams or More in 2005, to Sale of Less Than .5 Grams of a Controlled Substance again in 2005, and to Possession of Cocaine for Resale in 2009. (PSR at 15-16, 19). These crimes are all completed crimes, and therefore, according to *Garth*, are not attempt crimes "that *Havis* puts beyond the guidelines' reach."[4] *Garth*, 965 F.3d at 497. Therefore, Defendant's predicate crimes are controlled-substance offenses under the Sentencing Guidelines, and support Defendant's career-offender status,[5] even if Defendant were sentenced today and *Havis* applied. Accordingly, Defendant's invocation of *McCall* and *Havis* in support of his argument that extraordinary and compelling reasons exist is a non-starter and fails to aid Defendant in his endeavor to demonstrate that extraordinary and compelling reasons exist.

B. <u>Minor Children</u>

In the Motion, Defendant additionally relies on his desire to care for his minor children. (Doc. No. 81 at 7). He asserts that the children's caregiver (Defendant's grandmother) "has had complications with being able to stand for long periods of time." (*Id*.).

As noted above, the Sentencing Guidelines' policy statement describes "(i) [t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" as an example of an extraordinary and compelling reason that warrants a defendant's release. *See* U.S.S.G. §

---

[4] This makes perfect sense because the required *actus reus* for the crime—possession (of a controlled substance)—is something that the defendant must *do*, and not merely *attempt* to do.

[5] *See Garth*, 965 F.3d at 497 ("Under § 4B1.1(b), a defendant qualifies as a career offender when he 'has more than one prior conviction for either crimes of violence or controlled-substance offenses.'" (citing USSG § 4B1.1)).

1B1.13. Although § 1B1.13 "is not binding, this policy guidance is highly persuasive authority in resolving motions for compassionate release." *United States v. Hicks*, No. CR 93-97-2 (BAH), 2021 WL 1634692, at *5 (D.D.C. Apr. 27, 2021). However, "the death [or incapacitation] of a minor child's caregiver only amounts to an 'extraordinary and compelling reason' when the defendant has provided documentation that they are the only available caregiver for the child."[6] *United State v. Lemon*, No. 4:16-cr-0239, 2021 WL 1060142, at *2 (N.D. Ohio Mar. 18, 2021).

Here, Defendant has presented no evidence (in the form of medical documentation, for example) to establish that grandmother's medical condition. And even if Defendant had submitted such documentation, he has not met his burden to show that such medical condition requires a finding that his grandmother is incapacitated and thus unable to care for his children. Further, even if Defendant had shown that his grandmother is incapacitated, Defendant has not met his burden to show that he is the only available caregiver for his children.

Unfortunately, "the care of minor children is a problem faced by many convicted defendants." *United States v. Kibby*, No. 2:19-cr-179, 2021 WL 2009568, at *3 (S.D. Ohio May 20, 2021). The existence of such a problem, without more, is an ordinary, not extraordinary, circumstance. Defendant has not met his burden to demonstrate that his grandmother incapacitated, and even if he had, he would still have failed to satisfy his burden to demonstrate that he is his

---

[6] Though not insensitive to the needs of family members (typically minors or persons with disabilities) who would benefit from an inmate's caregiving, the undersigned has serious concerns about granting compassionate release to inmates based on the inmate's asserted need to be a caregiver for a minor family member, for two reasons. First, it creates a risk that cumulatively, persons without minor dependents will on average serve longer sentences than persons with minor dependents; in the undersigned's view, this raises the unwelcome specter that the former category is effectively discriminated against on the basis of familial status. Second, there is a sense in which it would be perverse for persons with minor dependents to receive on average shorter sentences than those without minor dependents, given that persons with minor dependents are, if anything, more culpable than those without minor dependents inasmuch as they (and not those without minor dependents) seriously shirked duties owed to vulnerable family members reliant on them, by committing crimes that subjected them to incarceration. Nevertheless, the Court follows the above-referenced case law outlining the circumstances under which it may find that a minor child's need for caregiving from the inmate constitutes an extraordinary and compelling reason for compassionate release.

minor children's only available caregiver. Therefore, Defendant's asserted desire to care for his minor children does not constitute extraordinary and compelling reasons for his release.

C. Conclusion

Accordingly, the Court finds that Defendant has not met his burden to demonstrate extraordinary and compelling reasons for his release. Thus, the Motion is denied on this basis, and the Court need not proceed to the remaining steps of the compassionate release analysis (*i.e.*, an analysis of the Section 3553(a) factors).

## CONCLUSION

Compassionate release is an extraordinary remedy. *See*, *e.g.*, *United States v. Rizzo*, No. CR 16-20732, 2020 WL 2092648, at *3 (E.D. Mich. May 1, 2020). Such remedy is unavailable here, given that it would be inappropriate, considering that Defendant has not met his burden to demonstrate extraordinary and compelling reasons for his release.

For these reasons, the Motion for Compassionate Release (Doc. No. 81) will be **DENIED**.

An appropriate order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE